# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| ONE BLACK IPHONE RECOVERED | ) | |
| FROM CHAT VANG, CURRENTLY | ) | Case No.    2:26-sw-0366 JDP |
| LOCATED AT THE USPIS OFFICE AT | ) | |
| 2000 ROYAL OAKS DR IN | ) | |
| SACRAMENTO, CA | ) | |

**FILED**

**Apr 28, 2026**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

## SEE ATTACHMENT A, attached hereto and incorporated by reference.

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

## SEE ATTACHMENT B, attached hereto and incorporated by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1704 | Stolen/reproduced postal keys or locks |
| 18 U.S.C. § 1708 | Stolen mail |
| 18 U.S.C. § 1028 | Identification fraud |
| 18 U.S.C. § 1029 | Access device fraud |

The application is based on these facts:

## SEE AFFIDAVIT, attached hereto and incorporated by reference.

☐ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/ Iain McIntyre
*Applicant's signature*

Iain McIntyre, U.S. Postal Inspector
*Printed name and title*

Sworn to before me over the telephone and signed pursuant to Fed. R. Crim. P. 4.1 and 4(d).

Date:   April 28, 2026

_Judge's signature_

City and state:   Sacramento, California

Jeremy D. Peterson, U.S. Magistrate Judge
_Printed name and title_

ERIC GRANT
United States Attorney
VERONICA M.A. ALEGRÍA
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Seizure and Search of: | CASE NO. |
|---|---|
| ONE BLACK IPHONE RECOVERED FROM CHAT VANG, CURRENTLY LOCATED AT THE USPIS OFFICE AT 2000 ROYAL OAKS DR IN SACRAMENTO, CA | AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH A DEVICE |

I, Iain McIntyre, being first duly sworn, hereby depose and state as follows:

## I.    INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—a black iPhone—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Postal Inspector with the United States Postal Inspection Service ("USPIS"), an investigative law enforcement officer of the United States of America, within the meaning of Title 18, United States Code, Section 2510(7).  I am empowered by law to conduct investigations of, and to make arrests for, offenses related to the U.S. Postal Service (hereinafter "USPS") and the mails, as authorized by 18 U.S.C. § 3061.  I have been employed as a United States Postal Inspector since August 2022.  I am currently assigned to the North Valley External Crimes ("NVEC") Team, which investigates crimes against the United States Postal Service ("USPS") and crimes related to the misuse of and attacks on the mail system, including theft of United States mail, fraud, theft and counterfeiting of postal keys, and identity theft.  I completed a sixteen-week basic training course in Potomac, Maryland.  That course

AFFIDAVIT

1

included training in the investigation of mail theft, mail fraud, identity theft, and fraud in connection with access devices.  I have completed additional in-service training regarding mail theft, and the means and methods by which individuals commit mail theft.  As a U.S. Postal Inspector, I have participated in numerous criminal investigations relating to theft of U.S. Mail, possession of stolen U.S. Mail, bank fraud, identity theft, and related crimes.

3.      Based on my discussions with other Postal Inspectors and in my knowledge from working mail theft and fraud investigations jointly, I have learned the different motivations and methods for which these crimes are committed. I know that criminals commit mail theft for the purpose of obtaining financial instruments such as checks, access devices such as credit or debit cards, identity documents such as drivers' licenses, passports, or passport cards, and personal identifiable information (PII) such as names, social security numbers, bank account numbers, birth dates, and similar information. Criminals then use these items to commit crimes such as check fraud, bank fraud, fraud in connection with access devices, identity theft, and similar crimes. I know that criminals often utilize computers, mobile devices and the internet to aid in their criminal activities including, but not limited to, the planning of crimes, communication with co-conspirators, and the sale of stolen goods.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.      Where statements made by other individuals are referenced in this Affidavit, such statements are described in sum and substance and in relevant parts only.  Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant parts only.

6.      Based on the facts set forth in this affidavit, there is probable cause to believe that Chat Chai VANG ("VANG") violated or aided and abetted violations of one the following federal criminal laws: 18 U.S.C. § 1704 (stolen/reproduced postal keys or locks), 18 U.S.C. § 1708 (stolen mail); 18 U.S.C. § 1028 (identification fraud), and 18 U.S.C. § 1029 (access device fraud).  Further, there is probable cause to search the items described in Attachment A for evidence of these crimes as further

AFFIDAVIT                                          2

described in Attachment B.

## II.    IDENTIFICATION OF THE DEVICE TO BE EXAMINED

7.    The property to be searched is ONE BLACK IPHONE RECOVERED FROM CHAT VANG, hereinafter the "Device."  The Device is currently located in evidence storage at the U.S. Postal Inspection Service office at 2000 Royal Oaks Drive in Sacramento, California 95813.

8.    The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## III.    PROBABLE CAUSE

### A.    USPIS begins investigating serial burglaries of USPS delivery vehicles

9.    On March 3, 2026, Inspector Heather Walker responded to a report of the burglary of a USPS delivery vehicle (hereinafter "mail truck") in the vicinity of 3800 Dayton Street, Sacramento 95838.  A USPS Letter Carrier, hereinafter "A.W.", was present upon Inspector Walker's arrival and identified him/herself as the driver of the mail truck at the time of the burglary.  A.W. stated, in summary that at approximately 2:00 PM, he/she was delivering mail to an apartment complex located at 2125 North Avenue, when he/she noticed a white Lexus sedan follow his/her delivery vehicle through the apartment complex's security gates.  A.W. stated the suspect driving the Lexus parked the vehicle and appeared to be watching him/her.  The suspect did not exit the vehicle throughout the duration of A.W.'s delivery to the apartments.  As A.W. continued his/her route to 3941 Pinell Street, he/she again noticed the same Lexus drive past A.W.  As A.W. continued delivering his/her route down the 3800 block of Pinell Street, he/she saw the same Lexus pass him/her again, noticing the vehicle turn west onto Harris Avenue.  A.W. parked his/her mail truck in front of 3837 Dayton Street where he/she dismounted his/her vehicle for a foot delivery route.

10.    As A.W. walked away from his/her mail truck, he/she noticed the same Lexus pull up and park behind his/her mail truck.  A.W. saw a suspect exit the Lexus and approach driver's side door of the mail truck, where the suspect appeared to use some object to unlock the vehicle.  A.W. stated he/she was afraid to approach the suspect.  A.W. observed the suspect remove several trays of mail and parcels from the mail truck and place them in the rear driver's side door of the Lexus.  The suspect then re-entered the Lexus and sped away from the area, heading south on Dayton St towards Grand Avenue.

AFFIDAVIT

3

Upon examining the mail truck, A.W. noted the subject took all of the mail he/she had left for the rest of the route.

11.    A.W. described the subject as a male, large in stature, wearing a black hooded sweatshirt, with a yellow, fluorescent vest worn over top of the sweatshirt.  The subject was wearing a mask, and A.W. could not determine his ethnicity or other facial features.

12.    A.W. described the white Lexus as being an older model sedan, possibly a 2008 or 2009 model, and stated he/she had copied the vehicles license plate by typing it into his/her phone, which A.W. provided as "9HUH844".  The Postal supervisor who reported the theft initially provided the license plate "9HOH844".  A query of law enforcement databases showed neither of these license plates was assigned to a Lexus sedan.

13.    After the suspect departed, A.W. returned to the mail truck, where he/she noticed two "GM" branded keys on a keyring laying on the floorboard of the vehicle.  A.W. believed these keys were the object the suspect used to open the mail truck.  A.W. provided Inspector Walker with the keys, as well as a photograph he/she had taken of them.  Inspector Walker noted that one of the keys appeared to have been shaven down and altered in comparison to the other key attached to the keyring.  Based on my training and experience, I know that "shaved" keys can be used to open locks of a similar model.  Additionally, A.W. noted approximately four feet of mail was missing (letter mail and flats are often stored in multi-foot long trays).

**B.    Mail Truck Burglary at 2316 Park Estates Drive**

14.    On March 5, 2026, I and Postal Inspectors Jason Capizzano and Marvin Smith responded to a report of the burglary of a mail truck at 2316 Park Estates Drive in Sacramento, California.  The Letter Carrier who had been operating the mail truck at the time of the burglary, hereinafter "M.R.", was present on scene.  I interviewed M.R., who stated in summary that at approximately 11:30, M.R. parked the mail truck on the east side of the street at the above address and departed on a foot delivery loop.  Upon returning to the mail truck, M.R. observed a male suspect in the vicinity of the mail truck.  M.R. described the man as wearing a puffy, fluorescent work-type top and a yellow ski mask-type head covering.  M.R. stated the suspect's head was at the height of the vehicle's mirror, which M.R. estimated to be 6'0" high.  M.R. did not take further note of the man, as M.R. assumed he was part of a nearby

AFFIDAVIT                                                  4

landscaping crew.  As M.R. approached, the man moved out of M.R.'s line of sight behind the mail truck, and shortly after drove north on Park Estates Drive in a tan sedan.  The man was the sole occupant, and the vehicle lacked tint that would obscure rear passengers.  M.R. was unable to recall a make, model, or distinguishing features of the vehicle.  Upon reaching the mail truck, M.R. observed a tray of letter mail and a tray of mail flats which had previously been stored in the front cargo area were now missing. Canvassing of the area did not produce any witnesses or video of the crime.

## C.    Mail Truck Burglary at 6324 Channing Dr

15.    On March 9, 2026, I and Postal Inspector Heather Walker responded to a report of the burglary of a mail truck at approximately 10:30 AM the same day at 6324 Channing Drive in North Highlands, California.  During canvassing of the neighborhood, I located a witness to the burglary, hereinafter "M.S.", who stated, in summary that M.S. was in his/her front yard when he/she observed a suspicious vehicle, which M.S. described as a black SUV, driving back and forth on the 6300 block of Channing Drive.  After the Letter Carrier arrived, parked the mail truck, and departed the mail truck to deliver mail, the SUV parked behind the mail truck, and a male suspect exited the driver's side of the SUV.  M.S. described the suspect as shorter than me (5'10"), perhaps up to my shoulder, and as wearing a face covering and green and orange high visibility vest.  The suspect approached the mail truck and opened the rear cargo area without difficulty.  The suspect then proceeded to take mail from the cargo area of the mail truck and place it in the SUV before re-entering the SUV, driving north on Channing Drive, and turning left at the end of the block.  A security system at 6320 Channing Drive captured video of the burglary, which a resident provided to USPIS.  A cropped still from that video is Figure 1 below:

AFFIDAVIT

5



FIGURE 1 - CHANNING DR BURGLARY

16.    Based on a comparison of the security footage with online sources, I identified the vehicle as a current-generation Genesis GV80 SUV.

**D.    Mail Truck Burglary at 4340 Robertson Avenue**

17.    On March 10, USPIS was informed by Postal management of the burglary of a mail truck at approximately 2:30 PM the previous day in the vicinity of 4340 Robertson Avenue in Sacramento, California.

18.    On March 12, I interviewed the Letter Carrier operating the targeted vehicle, hereinafter "S.B.", who stated, in summary, that at approximately 2:30 PM on March 9, 2026, S.B. parked his/her mail truck in front of 4340 Robertson Avenue, secured the vehicle, and departed on a foot delivery loop. When S.B. returned to the mail truck at approximately 2:51 to 2:55 PM, he/she opened the rear cargo area and observed letter mail previously stored in the cargo area was missing.  S.B. also observed flat mail strewn on the floor, which was unusual.  S.B. did not observe any unusual activity, but noted the street was busy, with pedestrians walking their dogs at that time of day.

19.    I canvassed the area around 4340 Robertson Avenue, but was unable to find any witnesses or footage of the burglary.

**E.    Mail Truck Burglary at 817 Haggin Avenue**

20.    On March 11, 2026, at approximately 1:00 PM, a Letter Carrier, hereinafter "A.T." parked his/her mail truck on the south side of Haggin Avenue across the street from 817 and 821 Haggin Avenue in Sacramento, California.  Upon returning to the vehicle at approximately 1:20 PM, A.T.

AFFIDAVIT

discovered all mail previously stored in the back of the mail truck was gone.  A.T. did not observe any suspicious vehicles or individuals in the vicinity.  A.T. immediately contacted his/her supervisor, who contacted USPIS.

21.    I responded to Haggin Avenue and canvassed for witnesses and security footage of the burglary.  A security camera system at 817 Haggin Avenue captured video of a black SUV which appeared to be a Genesis GV80 driving around the neighborhood at the time of the burglary, and still images of the same vehicle parked behind the mail truck with an individual in a high visibility vest between the two vehicles.  A cropped still from the security system is Figure 2 below:



FIGURE 2 - HAGGIN AVE BURGLARY

**F.    Mail Truck Burglary at 8417 Villaview Drive**

22.    On March 11, USPIS was informed by Postal management of the burglary of a mail truck at approximately 4:15 PM the same day in the vicinity of 8417 Villaview Drive in Citrus Heights, California.

23.    On March 13, 2026, I responded to the 8400 block of Villaview Drive and canvassed for witnesses and video.  A security camera system on 8417 Villaview Drive captured a still photo of a black SUV which appeared to be a Genesis GV80 with its rear cargo liftgate open and parked near the mail truck.  A resident of the house provided the still photo to USPIS.  A cropped version of the still is Figure 3 below:

AFFIDAVIT                                                      7



FIGURE 3 - VILLIAVIEW DR BURGLARY

### G.   Mail Truck Burglaries at 2605 Cedaridge Way and 9440 Appalachian Drive

24.   On March 14, 2026, USPIS was informed by Postal management of the burglaries of two mail trucks at approximately 11:30 AM the same day in the vicinity of 2605 Cedaridge Way and 9440 Appalachian Drive, which are both in Sacramento, California, approximately 2.4 miles apart.

25.   On March 16, 2026, Inspector Heather Walker responded to 9440 Appalachian Drive and canvassed the area, but was unable to find any witnesses or footage of the burglary.

26.   On March 16, 2026, Inspector Capizzano responded to 2605 Cedaridge Way and canvassed the area for witnesses or footage of the burglary.  A security camera system on 2521 Niagara Way in Sacramento, California, captured footage of a black SUV, which appeared to be a Genesis GV80, parking near the mail truck and later driving away.  A resident of the home provided this video to USPIS.  A cropped still from that footage is Figure 4 below:

AFFIDAVIT

8



FIGURE 4 - CEDARIDGE GENESIS

**H.** **Mail Truck Burglary at 1508 Sheridan Avenue**

27. On March 16, 2026, USPIS was informed by Postal management of the burglary of a mail truck at approximately 3:12 PM the same day in the vicinity of 1508 Sheridan Avenue in Roseville, California. Postal management stated the Letter Carrier operating the mail truck at the time of the burglary, hereinafter "A.H.", described the events as follows: A.H. parked the mail truck on the 1500 block of Sheridan Avenue in Roseville, and departed to make a foot delivery loop. After A.H. departed, a black Genesis GV80 SUV, California license plate 9XHU892, reversed up to the rear of the mail truck and parked while simultaneously opening the SUV's rear cargo area hatch. The sole occupant and driver of the SUV exited, wearing a neon-green balaclava except for hair on the rear of their head, a neon-green vest, and casual jeans. The suspect approached the rear of the mail truck and used a key to open the rear cargo area liftgate. The suspect transferred a tray of mail, packages, and a tub of mail addressed to the apartments at 1451 Rocky Ridge Drive. The homeowners of 1508 Sheridan Avenue exited their house and yelled at the suspect, which caused him to close the rear of the mail truck and attempt to close the rear of the SUV. The suspect re-entered the SUV and sped off, causing most of the stolen mail and packages to spill out onto the street.

28. On March 17, 2026, Inspector Walker responded to interview witnesses to the burglary. The witnesses, hereinafter "C.M." and "R.M." are residents of 1508 Sheridan Avenue. R.M. stated he/she was working at his/her desk in the residence at approximately 3:00 PM, when R.M. observed the Letter Carrier arrive at approximately 3:00 PM and park their mail truck directly in front of R.M.'s

house.  Shortly after the Letter Carrier departed the mail truck to deliver mail on foot, R.M. noticed a black SUV drive slowly past the mail truck, before reversing and backing up to the rear of the mail truck to the point of nearly touching it.  The SUV stopped there for several seconds before driving forward again and turning west onto Crestmont Oak Drive.  Approximately five minutes later, the SUV returned, and again reversed up to the rear of the mail truck.  The rear cargo hatch of the SUV began to open, and simultaneously, a male suspect exited the driver's door of the SUV and approached the mail truck.

29.    R.M. described the suspect as an adult male, who he/she estimated to stand approximately six feet tall, and weigh approximately two hundred pounds.  R.M. described the suspect as wearing a long-sleeved sweatshirt with a "neon" vest over the top, a neon green face covering, blue jeans, and gloves.  R.M. observed the suspect approach the rear cargo door of the mail truck and open it using what appeared to be a key.  The suspect then began to remove tubs of mail from the rear of the mail truck and place them in the back of the SUV.  R.M. alerted C.M. to the incident.  The pair exited the residence and approached the suspect in an attempt to scare him off.

30.    As the suspect became aware of R.M. and C.M.'s approach, he attempted to close the cargo areas of both vehicles before re-entering the driver's door of the SUV.  The suspect fled west on Crestmont Oak Drive.  R.M. stated the rear cargo hatch of the SUV did not securely close before the suspect drove away, and a roll of trash bags and an unknown amount of mail spilled out of the cargo area as the suspect fled.  C.M. reviewed video of the incident on his/her phone in the presence of Inspector Walker, and subsequently provided that footage to USPIS.  R.M. took a photograph of suspect's SUV as he fled.  The SUV's license plate is visible as California plate 9XHU892 in the photograph.  A cropped version of this photo is Figure 5 below:

AFFIDAVIT                                                      10



FIGURE 5 - SHERIDAN AVE BURGLARY

31.     A check of California Department of Motor Vehicles ("CA DMV") records showed 9XHU892 was a valid license plate, assigned to a 2026 Genesis GV80 SUV and currently registered with Hertz Vehicles, LLC.  Based on my training and experience, I know that Hertz is a car rental company with branches in California.

**Location of Genesis SUV and Arrest of VANG**

32.     On March 17, 2026, Inspector Walker contacted Sacramento Police Department ("SPD") Officer Michael Schraer, and provided Officer Schraer with the license plate number of the black SUV, 9XHU892.  At approximately 11:20 AM, Officer Schraer contacted Inspector Walker, and reported a search of law enforcement databases produced records indicating a Genesis GV80 bearing license plate number 9XHU892 had been located at the intersection of Norwood Avenue and Silver Eagle Road that morning at approximately 1:00 AM.

33.     Inspector Walker began driving through the neighborhood in search of the Genesis GV80.  At approximately 11:30 AM, Inspector Walker was driving north on Mabel Street when she observed a black SUV bearing a Genesis logo on Graves Avenue.  Inspector Walker drove past the vehicle, confirming it bore California license plate 9XHU892, and parked her unmarked vehicle nearby. She then notified Officer Schraer, me, and other Postal Inspectors that she had located the vehicle.  She confirmed the vehicle was parked in front of 199 Graves Avenue, Sacramento, California 95838, and relayed license plate numbers of other vehicles on the block for registration checks. Queries of interstate

DMV records showed a red Audi Q3, bearing Floridia license plate 25F-CNE, parked directly behind the Genesis, was registered to Enterprise, another car rental company, and a white Lexus sedan, bearing California license plate 7GVS105, parked in the driveway of 199 Graves Avenue, was registered to Chat Chai VANG. At approximately 12:05 PM, Officer Schraer informed Inspector Walker that VANG was currently on searchable pretrial release in Sacramento County, and 199 Graves Avenue was his permanent address. Officer Schraer offered, with additional SPD officers, to join Inspector Walker in conducting surveillance of the Genesis and residence. Inspector Walker accepted their assistance.

34.    At approximately 12:20 PM, Inspector Walker observed an Asian female adult, later identified as Ker VUE, exit 199 Graves Avenue and place items inside of the red Audi Q3. After several minutes, VUE entered the driver's seat of the Audi and closed the door. An Asian male adult, later identified as VANG, exited 199 Graves Avenue carrying a black plastic tote box, which he placed in rear passenger side door of the Audi Q3. Inspector Walker observed identifiable tattoos on VANG's neck, which Inspector Walker recognized as similar to VANG's tattoos in previous jail booking photographs. VANG then entered the Audi Q3 through the driver's side passenger door. During this time, Inspector Walker took several photos of VANG, which she shared with Officer Schraer. Officer Schraer agreed with Inspector Walker's identification of VANG.

35.    The Audi began to drive away from the area, heading West on Grave Avenue, and Inspector Walker proceeded to follow the Audi for approximately five minutes. She alerted Officer Schraer that VUE and VANG had left the residence in the Audi. Officer Schraer stated he and other SPD officers were nearby, and would conduct a traffic stop of the Audi. He requested Inspector Walker return to 199 Graves Avenue and resume surveillance of the Genesis.

36.    After her return to 199 Graves Avenue, at approximately 1:05 PM, Inspector Walker was informed by Officer Schraer that the Audi had been successfully stopped, and VANG and VUE taken into custody. He reported a black tote located in the rear seat of the Audi contained what appeared to be mail predominately addressed to apartments located at 1451 Rocky Ridge Drive in Roseville, California, and VANG was in possession of the keys to the Genesis GV80 and the Device which is the subject of this warrant.

37.    At approximately 1:25 PM, SPD Officers arrived back at 199 Graves Avenue and

AFFIDAVIT                                    12

conducted a probation search of VANG's residence and the Genesis GV80.  VANG and VUE remained detained in a SPD police vehicle during the search.  SPD officers limited their search to areas of the residence which VANG occupied or frequently used, identified by the homeowner as common areas, VANG's bedroom, and the garage.  Inspector Walker observed this search and served as a subject matter expert on mail and Postal questions.

38.    In addition to the Device and key fob for the Genesis found on VANG's person when he was taken into custody (attached to a Hertz rental tag), the search recovered additional evidence indicating VANG and VUE were engaged in mail theft and related crimes.  The following list is not exhaustive of all items seized by SPD during the search and subsequently transferred to USPIS, but is presented as examples to further establish probable cause that VANG was engaged in mail theft and related crimes, and likely using the Device in furtherance of such crimes:

a)    The black tote from the Audi containing more than fifty pieces of suspected stolen mail, access devices in the names of individuals other than VANG or VUE, and identity documents in the names of persons other than VANG or VUE, some of which were believed to be altered.

b)    From the garage and bedroom: over 100 pieces of suspected stolen mail, several real and counterfeit California driver's licenses not belonging to VANG, three U.S. Passports not belonging to VANG, more than twelve credit/debit cards not belonging to VANG, and a neon green face covering with eye holes cut into it.

c)    From the black Genesis: more than fifty pieces of suspected stolen mail, several of which were addressed to customers at 1451 Rocky Ridge Drive in Roseville.  Also recovered was a bright yellow high visibility vest, a roll of large black garbage bags, and a Hertz rental agreement executed in the name of a suspected victim, hereinafter M.H.

39.    Officer Schraer conducted custodial interviews of VANG and VUE in the presence of Inspector Walker.  VUE waived her rights and agreed to speak to Officer Schraer.  In the course of the questioning, VUE admitted she rented the Audi Q3 using an ID which did not belong to her.  VUE stated she did not want to use someone else's ID for the rental, but VANG had asked her to.  VUE claimed she did not rent the Genesis GV80, and had no information as to who rented it.  VUE stated

AFFIDAVIT

13

VANG was the only person she knew of who drove the Genesis GV80 and had believed it to be his vehicle, claiming she was unaware it was a rented vehicle.

40.    At approximately 3:15 PM, VANG and VUE were transported and booked into the Sacramento County Jail on identity theft and restraining order violation charges.

### The Subject Device Likely Contains Evidence of a Crime

41.    Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I am aware that persons involved in mail theft, along with their conspirators/accomplices, use smart phones, cell phones, tablets, and computer laptops to communicate with one another, either by voice calls, emails, or text messages regarding their fraud, counterfeiting, and theft activities.  I know that perpetrators who use such devices commonly exchange real time information about theft, counterfeiting, and fraud activity and other information regarding execution of theft or counterfeiting of postal keys.  Such information can be found stored in the text/email messages and images on such devices.  Such persons also use the devices to link with the internet to obtain addresses and maps and locations/addresses of victims, including but not limited to merchants, banks, and individual identity theft victims.  Such devices can also be used to remotely make online fraudulent purchases, perform false or fraudulent mobile banking operations and checks (verifications), and distribute the proceeds of fraudulent activities to co-conspirators via banking and money-transfer applications.

42.    Further, based upon my training and experience, and my discussions with other law enforcement personnel, I am aware that it is common for perpetrators of mail theft and counterfeiting of USPS keys to use electronic devices to obtain information for the execution of their scheme or to disseminate scheme information to other individuals.

43.    I am aware that the complete contents of text messages, image files, and emails may be important to establishing the actual user who has dominion and control of a particular phone or computer at a given time.  Cell phones may be subscribed to under false names with little to no verification by the service provider.  Cell phones and computers may also be used by multiple people.  Given the ease with which such items may be obtained and used, and the rarity with which law enforcement has eyewitness testimony about a defendant's use of a particular cell phone or device that

AFFIDAVIT

14

was used to send a particular text or email message, investigators often have to rely on circumstantial evidence to show that an individual was the actual user of a particular cell phone or device. Often, by piecing together information contained in the contents of the device (cell phone or computer or storage device) an investigator can establish the identity of the actual user. Often, those pieces will come from a time period before the device was used in criminal activity. Limiting the scope of the search for information showing the actual user of the device would, in some instances, prevent the government from identifying the user of the device and, in other instances, allow a defendant to possibly suggest that someone else was responsible. Therefore, the entire content of a communication device often provides important evidence regarding the actual user's dominion and control of the device. Moreover, review of the contents of communications of electronic storage devices, including text and email messages sent or received by the subject device assist in determining whether other individuals had access to the device.

44.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I am aware that criminals discussing their criminal activity via electronic communication devices (email and text messaging) may use images, slang, short forms or code words (which require entire strings or series of text message conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime involved. It is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of a text message or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and parentheses :) to convey a smile or agreement) to discuss matters. "Keyword searches" or other automated methods of review of the text messages sent to and from the subject device would not account for any of these possibilities, so actual review of the text and email messages by law enforcement personnel with information regarding the identified criminal activity is necessary to find all relevant evidence.

45.     Based upon my training and experience, my conversations with other law enforcement personnel assisting in this case, and my investigation in this case, I have learned the following additional information:

a)     Individuals who commit fraud will scan onto computers, cell phones, and

computer storage devices stolen personal or banking information, and maintain on computers, cell phones, and storage devices co-conspirators names, victim's names, addresses (of victims, associates, accomplices), and stolen means of identification, to include images of such, thereby reducing such items' exposure to law enforcement and the community.  Individuals use their cell phones and personal computers to make online purchases using gift cards to order items that will be shipped to their residences.

b)    I am aware that even if a perpetrator deletes evidence of criminal activity (such as identity theft, and fraudulent use of financial information) from electronic storage devices, the evidence often can be recovered from the devices, including computers or other forms of electronic storage media.

46.    Based on my training and experience, and discussions with other law enforcement personnel, I am aware that individuals that are involved in mail theft and fraud schemes often work with others to use stolen items (including checks, financial information, and personally identifying information), often maintain close contact, and travel together. I am aware that in mail theft schemes, perpetrators often use victim names, pose as victims on-line to make internet transactions and to open accounts. Perpetrators will do this to avoid detection and to create layers of anonymity. I am aware that perpetrators will keep tools, implements, financial statements, access devices, and stolen items close to themselves (especially in electronic devices, vehicles, on their person, in their residences, and in storage units). They also maintain such in areas which they have access to ensure custody and control of the items and for easy access for use or disposal.

47.    Based on my training and experience, and investigation in this case, there is probable cause that the Device contains evidence of VANG's mail theft and fraud conduct. As a general matter, when persons are involved in mail theft and fraud related activities, evidence of such activities is often found on their electronic devices, as discussed above.

48.    The Device is currently in storage at the U.S. Postal Inspection Service office at 2000 Royal Oaks Drive in Sacramento, California. In my training and experience, I know that the Device in law enforcement custody has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the

AFFIDAVIT

16

possession of USPIS.

## IV.    ELECTRONIC STORAGE AND FORENSIC ANALYSIS

49.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

50.    Forensic evidence.  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a)    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file.

b)    Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c)    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d)    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e)    Further, in finding evidence of how a device was used, the purpose of its use, who used

AFFIDAVIT                                                                    17

it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f)    I know that when an individual uses an electronic device, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime.  The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense.  The electronic device is also likely to be a storage medium for evidence of crime.  From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

51.    Nature of examination.  Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device consistent with the warrant.  The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

52.    Manner of execution.  Because this warrant seeks only permission to examine Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

//
//
//
//
//
//
//
//

AFFIDAVIT                                                18

## V.    CONCLUSION

53.    I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

/s/ Iain McIntyre
Iain McIntyre
Postal Inspector
United States Postal Inspection Service

Subscribed and sworn to telephonically:   April 28, 2026

The Honorable Jeremy D. Peterson
UNITED STATES MAGISTRATE JUDGE

/s/ *Veronica Alegría*
Approved as to form by AUSA VERONICA M.A. ALEGRÍA

AFFIDAVIT

19

**ATTACHMENT A**

The property to be searched is  ONE BLACK IPHONE RECOVERED FROM CHAT VANG, hereinafter the "Device."  The Device are currently located at THE USPIS OFFICE AT 2000 ROYAL OAKS DR IN SACRAMENTO, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

      1.      All records on the Device described in Attachment A that relate to violations of: 18 U.S.C. § 1704 (stolen/reproduced postal keys or locks), 18 U.S.C. § 1708 (stolen mail); 18 U.S.C. § 1028 (identification fraud), and 18 U.S.C. § 1029 (access device fraud), and involve Chat VANG since January 2026, including:

    a.    Any electronic records, including e-mail messages, text messages, videos, electronic documents, images, and/or data tending to identify persons exercising dominion and control over each digital device searched; and tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of any electronic information;

    b.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to the counterfeiting of USPS keys (including references to USPS keys, USPS locks, vehicles, gloves, manufacturing tools, stock or raw materials);

    c.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to obtaining, possessing, profiling, using, and or selling personal, identifying, and financial information, to include identification numbers (such as dates of birth, social security numbers, and driver's license numbers), financial institution account numbers, credit cards and credit card images and numbers, and goods and services obtained;

    d.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to the false use or theft of personal and/or financial identifying information, credit and credit cards, checks, and merchandise (including references to USPS keys, vehicles, gloves, pry bars, other theft/burglary tools, computers, printers, ID. and check making software, electronic reader writers, label makers, heat sealers, embossers, identification imprinters, paper stock, access devices, and/or stolen property proceeds);

    e.    Electronic address and/or telephone books and other electronic materials reflecting names, addresses, and/or telephone numbers of any persons who may be involved in the theft, possession, use, and transfer of access devices, financial instruments, personal, identifying, and financial information; identity theft, mail fraud, access device fraud, wire fraud, bank fraud, and sales of such items obtained by fraud, specifically including communications with VANG;

    f.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to victims of theft, forwarding, or relating to the theft, possession, use, transfer, and sale of personal identifying and financial information. Any and all names, addresses, identification information, and telephone numbers of potential victims;

    g.    Electronic books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks receipts, passbooks, bank checks

and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of proceeds and assets obtained with the use of identifications and application of credit cards and/or bank accounts in the names of persons other than VANG;

h.  Electronic records, contact lists, and image files of any and all associates of VANG, and people referenced in electronic contact lists, books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks receipts, passbooks, bank checks and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money associated with the use of identifications of others, credit card applications in the names of others, and the electronic transfer of funds;

i.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to use, acquisition, and/or sale of others' personal identifying and financial information, including contents of US mail (mailed cash and checks, identity documents, and bank statements), together with indicia of the possession, control, ownership, or use of such records in relationship to online purchases, on-line chats, and e-mails relating to identity theft, bank fraud, and access device fraud. Search shall include use of internet and social media sites, such as Facebook, to research victims;

j.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging), and information tending to show how money associated with the use of fraudulently obtained identifying information or access devices was obtained, secreted, transferred, and/or spent, including purchases of money orders, wire transfers, online purchases and electronic transfer of funds;

k.  Electronic books, records, receipts, notes, pictures, video, and communications (emails and text messaging), regarding software related to the production or editing of counterfeit checks;

l.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all transactions at or concerning financial institutions and merchants, prior to January 1, 2026;

m.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all whereabouts and activities, prior to January 1, 2026;

n.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all communications relating to obtaining wireless telephones or other wireless communications devices in the names of in the names of persons other than VANG, and the forwarding, possession, use, transfer, sale, or secreting of such telephones or communications devices;

o.  Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) that pertain to any and all fraud, theft, or credit and/or debit cards, or that tend to show a conspiracy or agreement;

p.  Records and information relating to the cellular service provider, phone number, and Internet Protocol address assigned to the device;

q.  Records and information relating to the existence, cellular service provider, phone number, serial number, or Internet Protocol address of any other wireless communication devices owned or controlled by VANG;

r.  All bank records, checks, credit card bills, account information, and other financial records.

2.  Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a.  records of Internet Protocol addresses used;

b.  records of Internet activity, including firewall logs, installed applications, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.  This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | | |
|---|---|---|---|
| In the Matter of the Seizure and Search of | ) | | |
| ONE BLACK IPHONE RECOVERED FROM CHAT VANG, CURRENTLY LOCATED AT THE USPIS OFFICE AT 2000 ROYAL OAKS DR IN SACRAMENTO, CA | ) ) ) ) ) ) | Case No. | 2:26-sw-0366 JDP |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____May 12, 2026_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    April 28, 2026 at 2:21 p.m.            _____
                                                                                            *Judge's signature*

City and state:       Sacramento, California            Jeremy D. Peterson, U.S. Magistrate Judge
                                                                                   *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name of any person(s) seized:

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____

_____
Signature of Judge                                                    Date

**ATTACHMENT A**

The property to be searched is  ONE BLACK IPHONE RECOVERED FROM CHAT VANG, hereinafter the "Device."  The Device are currently located at THE USPIS OFFICE AT 2000 ROYAL OAKS DR IN SACRAMENTO, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1.    All records on the Device described in Attachment A that relate to violations of: 18 U.S.C. § 1704 (stolen/reproduced postal keys or locks), 18 U.S.C. § 1708 (stolen mail); 18 U.S.C. § 1028 (identification fraud), and 18 U.S.C. § 1029 (access device fraud), and involve Chat VANG since January 2026, including:

a.    Any electronic records, including e-mail messages, text messages, videos, electronic documents, images, and/or data tending to identify persons exercising dominion and control over each digital device searched; and tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of any electronic information;

b.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to the counterfeiting of USPS keys (including references to USPS keys, USPS locks, vehicles, gloves, manufacturing tools, stock or raw materials);

c.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to obtaining, possessing, profiling, using, and or selling personal, identifying, and financial information, to include identification numbers (such as dates of birth, social security numbers, and driver's license numbers), financial institution account numbers, credit cards and credit card images and numbers, and goods and services obtained;

d.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to the false use or theft of personal and/or financial identifying information, credit and credit cards, checks, and merchandise (including references to USPS keys, vehicles, gloves, pry bars, other theft/burglary tools, computers, printers, ID. and check making software, electronic reader writers, label makers, heat sealers, embossers, identification imprinters, paper stock, access devices, and/or stolen property proceeds);

e.    Electronic address and/or telephone books and other electronic materials reflecting names, addresses, and/or telephone numbers of any persons who may be involved in the theft, possession, use, and transfer of access devices, financial instruments, personal, identifying, and financial information; identity theft, mail fraud, access device fraud, wire fraud, bank fraud, and sales of such items obtained by fraud, specifically including communications with VANG;

f.    Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to victims of theft, forwarding, or relating to the theft, possession, use, transfer, and sale of personal identifying and financial information. Any and all names, addresses, identification information, and telephone numbers of potential victims;

g.    Electronic books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks receipts, passbooks, bank checks

and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of proceeds and assets obtained with the use of identifications and application of credit cards and/or bank accounts in the names of persons other than VANG;

h. Electronic records, contact lists, and image files of any and all associates of VANG, and people referenced in electronic contact lists, books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier checks receipts, passbooks, bank checks and other electronic items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money associated with the use of identifications of others, credit card applications in the names of others, and the electronic transfer of funds;

i. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to use, acquisition, and/or sale of others' personal identifying and financial information, including contents of US mail (mailed cash and checks, identity documents, and bank statements), together with indicia of the possession, control, ownership, or use of such records in relationship to online purchases, on-line chats, and e-mails relating to identity theft, bank fraud, and access device fraud. Search shall include use of internet and social media sites, such as Facebook, to research victims;

j. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging), and information tending to show how money associated with the use of fraudulently obtained identifying information or access devices was obtained, secreted, transferred, and/or spent, including purchases of money orders, wire transfers, online purchases and electronic transfer of funds;

k. Electronic books, records, receipts, notes, pictures, video, and communications (emails and text messaging), regarding software related to the production or editing of counterfeit checks;

l. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all transactions at or concerning financial institutions and merchants, prior to January 1, 2026;

m. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all whereabouts and activities, prior to January 1, 2026;

n. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) relating to any and all communications relating to obtaining wireless telephones or other wireless communications devices in the names of in the names of persons other than VANG, and the forwarding, possession, use, transfer, sale, or secreting of such telephones or communications devices;

o. Electronic books, records, receipts, notes, ledgers, pictures, video, and communications (emails and text messaging) that pertain to any and all fraud, theft, or credit and/or debit cards, or that tend to show a conspiracy or agreement;

p. Records and information relating to the cellular service provider, phone number, and Internet Protocol address assigned to the device;

q. Records and information relating to the existence, cellular service provider, phone number, serial number, or Internet Protocol address of any other wireless communication devices owned or controlled by VANG;

r. All bank records, checks, credit card bills, account information, and other financial records.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

a. records of Internet Protocol addresses used;

b. records of Internet activity, including firewall logs, installed applications, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.     This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the investigating agency may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.